United States District Court
District of Massachusetts

_____
                                    )
**In re Thomas E Daley and Nicole** )
**Daley,**                          )
        Debtors,            )
_____ )   Civil Case No.
                                    )   17-10962-NMG
**United States of America, IRS,**  )
        Appellant,          )
                                    )
        v.                  )
                                    )
**Thomas E Daley & Nicole Daley,**  )
        Appellees.          )
_____ )

**MEMORANDUM & ORDER**

**GORTON, J.**

This bankruptcy appeal arises from a dispute regarding the priority of a creditor's claim in a bankruptcy proceeding. The Internal Revenue Service ("IRS" or "appellant") and joint debtor-appellees Thomas E. Daley and Nicole E. Daley (collectively, "the Daleys" or "appellees") disagree as to whether the liability imposed by an early withdrawal from a qualified retirement plan is 1) a tax, 2) compensation for actual pecuniary loss or 3) compensation for non-pecuniary loss. Appellees made early withdrawals from a qualified retirement plan in 2012 and 2013. Pursuant to 26 U.S.C. § 72(t), they incurred charges of $6,693 in 2012 and $10,351 in 2013

-1-

(collectively, "the 10% exaction"). Those charges were equal to approximately 10% of the amounts withdrawn by appellees from a qualified retirement plan in 2012 and 2013.

Pending before the Court is the appeal of the IRS from a United States Bankruptcy Court ("Bankruptcy Court") opinion holding that the 10% exaction is compensation for non-pecuniary loss and thus subject to a general unsecured claim.

## I. Background and Procedural History

In July, 2015, appellees filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code. In March, 2016, the IRS filed its fifth amended proof of claim No. 1 ("POC") in the amount of $44,149, of which $28,431 was categorized as "Unsecured Priority Claims". The amount of the Unsecured Priority Claim attributable to § 72(t) is $6,693 for the tax year 2012 and $10,351 for the tax year 2013.

In May, 2017, the Bankruptcy Court allowed the Daleys' motion for summary judgment and denied the IRS's cross-motion for summary judgment. The Bankruptcy Court held that the charges against the Daleys attributable to § 72(t) are penalties that do not compensate the IRS for a pecuniary loss and thus its claims are characterized as unsecured general claims. On May 22, 2017, appellant filed an appeal in this Court.

## II. Analysis

United States district courts have jurisdiction to hear "appeals from final judgments, orders, and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1). In reviewing an appeal from an order of a bankruptcy court, a district court reviews de novo conclusions of law but must accept the bankruptcy judge's findings of fact unless they are clearly erroneous. TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995).

An individual who makes an early withdrawal from certain qualified retirement accounts must include the withdrawn money in gross income for that year. 26 U.S.C. § 408(d)(1). Taxpayers must contribute an additional exaction "equal to 10 percent of the portion of such amount which is includible in gross income." 26 U.S.C. § 72(t)(1).

The IRS avers that the 10% exaction is either a tax or a penalty for actual pecuniary loss and as such should be properly characterized as an unsecured priority claim. The Daleys deny that characterization and maintain that the decision of the Bankruptcy Court characterizing the 10% exaction as an unsecured general claim should be affirmed. They contend that because the 10% exaction is not intended as recompense for an actual pecuniary loss, it is not entitled to priority status as an

-3-

unsecured priority claim.

### A. The Liability Imposed by § 72(t) Is Not a Tax for Bankruptcy Purposes

The IRS claims that the 10% exaction should be classified as a priority claim because it is a "tax on or measured by income or gross receipts." 11 U.S.C. § 507(a)(8)(A). It is purportedly a tax on income because it surcharges an additional 10% of the amount included in the taxpayer's gross income that has been withdrawn from a qualified retirement account.

Relying on Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566, 2596 (2012), the IRS also contends that the standard for determining whether an exaction is a tax or penalty for purposes of determining priority of claim in a bankruptcy proceeding is not whether the exaction deters certain conduct but rather whether it is a "punishment for an unlawful act or omission." The Daleys deny those characterizations and maintain that the standard for determining whether an exaction is a tax or penalty is whether the purpose of the exaction is to deter taxpayers from taking certain actions or to compensate the government for lost revenue.

When determining whether an exaction is a tax or penalty for purposes of establishing priority of claim in a bankruptcy proceeding, the United States Supreme Court has held that courts interpreting the Internal Revenue Code should place no weight on

-4-

the "tax" label in the statute but rather make determinations based "directly on the operation of the provision using the term in question." United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 220 (1996) ("CF & I"). As a result, the characterization of the 10% exaction as an "additional tax" in § 72(t) is not determinative of its status for priority in this bankruptcy proceeding.

The standard for determining whether the 10% exaction is a tax or a penalty for purposes of establishing priority of claim in a bankruptcy proceeding is complicated. Under the so-called "Feiring-Anderson" standard, taxes are defined as

> pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.

CF & I, 518 U.S. at 222 n.6.

To apply that standard, courts look beyond the statutory label of an exaction and evaluate its actual effects to determine "whether it functions as either a tax or else as some different kind of obligation, like a debt, fee, or penalty." Boston Reg'l Med. Ctr., Inc. v. Massachusetts Div. of Health Care Fin. & Policy, 365 F.3d 51, 58 (1st Cir. 2004) (citing CF & I, 518 U.S. at 221, 224-25) (additional citation omitted). For certain complex exactions, the First Circuit Court of Appeals has endorsed the use of a multi-factor test known as the

Lorber/Suburban II analysis. See id. (observing that courts have adopted additional criteria when "applying Feiring-Anderson's general definition of a tax to the unusual state exactions sometimes encountered in a bankruptcy contest"). Because the question before the Court in this case is not remarkably complex, the Feiring-Anderson test will suffice. See id. at 59 (suggesting that the Lorber/Suburban II approach "remains an available tool of analysis, although, of course, subject at all times to the overarching authority of Feiring and Anderson) (citations omitted).

The IRS's contention that NFIB replaced the Feiring-Anderson framework is unavailing.

The Supreme Court acknowledged in NFIB that the same exaction can be construed as a tax for some purposes and a penalty for others. See NFIB, 132 S. Ct. at 2594-5 (holding that the individual mandate is a penalty in the context of the Anti-Injunction Act and a tax in the context of the Constitution). It is true that the NFIB Court found that

> if the concept of penalty means anything, it means punishment for an unlawful act or omission.

Id. at 2596 (quoting CF&I 518 U.S. at 220).

But that remark appears in the Court's discussion of whether the disputed Affordable Care Act exaction constituted a tax for constitutional purposes. See id. at 2594 ("[W]hile that

label [as a penalty] is fatal to the application of the Anti-Injunction Act, it does not determine whether the payment may be viewed as an exercise of Congress's taxing power."). The case is silent on the standard for determining whether an exaction is a tax for bankruptcy purposes. There is no reason to believe it upset Feiring-Anderson.

The IRS cites no caselaw in which a court has adopted its interpretation of that provision. In contrast, multiple bankruptcy courts have held that § 72(t) exactions are penalties for purposes of the Bankruptcy Code. See, e.g., In re Cespedes, 393 B.R. 403, 409 (Bankr. E.D.N.C. 2008) (concluding that nothing in CF&I requires § 72(t) exactions to be construed as taxes and therefore § 72(t) exactions are a non-priority penalty); In re Bradford, 534 B.R. 839 (Bankr. M.D. Ga. 2015).

Similarly, the only United States Circuit Court of Appeals to address the question determined that the 10% exaction is a penalty in the context of the Bankruptcy Code. In re Cassidy, 983 F.2d 161, 164 (10th Cir. 1992). The Tenth Circuit reasoned that, because the purpose of the 10% exaction in bankruptcy proceedings is, inter alia, to deter debtors from discharging their obligations at the expense of innocent creditors, the exaction is a penalty for determining priority in bankruptcy. See id. This Court agrees with that conclusion. Although the

exaction may generate some revenue, the presence of "hardship" exceptions to the early withdrawal rule indicates that the purpose of the statutory provision is to deter unwanted conduct. Therefore, the exaction functions as a penalty and not a tax.

The judgement of the Bankruptcy Court that the Daleys' charges attributable to § 72(t) are penalties will be affirmed.

### B. The Liability Imposed by § 72(t) Is Not a Penalty for Actual Pecuniary Loss

Alternatively, the IRS claims that the 10% exaction should be classified as a penalty compensating the government for actual pecuniary loss because it compensates the government for the cost incurred in deferring tax revenue.  Appellant asserts that because the 10% exaction is a penalty for actual pecuniary loss, it is entitled to priority status as an unsecured priority claim under 11 U.S.C. § 507(a)(8)(G).  The Daleys deny that characterization and maintain that because the primary purpose of the 10% exaction is to deter taxpayers from taking early withdrawals from their retirement accounts, it is not a penalty for pecuniary loss and thus should be characterized as an unsecured general claim.

This Court agrees with appellees that the primary purpose of § 72(t) in the context of the Bankruptcy Code is to deter taxpayers from making early withdrawals from qualified retirement plans and not to compensate the government for lost

revenue. The Cassidy court concluded that the § 72(t) penalty is not for actual pecuniary loss because it is a flat rate penalty "bearing no relationship to the direct financial loss of the government." 983 F.2d at 164. This Court agrees. The exaction is also imposed on Roth IRAs, from which the government generally expects no tax revenue, and the rate does not change relative to the taxpayer's age. There is no indication that the government suffered any actual pecuniary loss for which it seeks compensation.

Accordingly, the judgment of the Bankruptcy Court that appellees' charges attributable to § 72(t) are penalties not for actual pecuniary loss will be affirmed.

**ORDER**

For the foregoing reasons, the order of the Bankruptcy Court is **AFFIRMED** and the bankruptcy appeal (Docket No. 1) is **DISMISSED**.

**So ordered.**

/s/ Nathaniel M. Gorton\_\_\_\_\_
Nathaniel M. Gorton
United States District Judge

Dated August 2, 2018